A. Rab **CHOWDHURY, M.D.,** Appellant,

v.

The **READING HOSPITAL AND MEDICAL CENTER.**

No. 81–2503.

United States Court of Appeals, Third Circuit.

Submitted under Third Circuit Rule 12(6) March 18, 1982.

Decided May 3, 1982.

Rehearing and Rehearing In Banc Denied June 4, 1982.

Malcolm H. Waldron, Jr., Waldron, Lipkin & Goldstein, Philadelphia, Pa., for appellant.

David H. Roland, Mogel, Speidel & Roland, Reading, Pa., for appellee.

Before ALDISERT, VAN DUSEN and GARTH, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Senior Circuit Judge.

This is an appeal from a final order of the district court dismissing the plaintiff's discrimination claim, brought under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.* (1976) (Title VI), for failure to exhaust his administrative remedies. *Chowdhury v. Reading Hospital and Medical Center,* 520 F.Supp. 134 (E.D.Pa.1981). The crucial operative language in the district court's opinion is:

> "Plaintiff's failure to seek administrative redress of his Title VI claims requires dismissal of the present complaint.... If the parties cannot amicably resolve their differences and other administrative remedies prove ineffective, plaintiff may return to the courts for relief. Accordingly, defendant's motion to dismiss will be granted."

*Id.* at 135 (citations omitted). This court has jurisdiction under 28 U.S.C. § 1291 (1976).

Because we believe this conclusion to be inconsistent with expressions found in previous opinions of this court and the Supreme Court, we will reverse.

## I.

■ These facts are alleged in the complaint:[1] The plaintiff is a physician licensed to practice medicine and surgery in the Commonwealth of Pennsylvania and Board certified in internal medicine and gastroenterology. He is not of the Caucasian race.

The defendant is a non-profit corporation operating a hospital in West Reading, Pennsylvania. It has received various sorts of federal financial assistance within the meaning of section 601 of Title VI, 42

---

1. On appeal from the dismissal of the plaintiff's action under Fed.R.Civ.P. 12(b)(6), the facts stated in his complaint must be accepted as true.

U.S.C. § 2000d (1976) (section 601). *See* 45 C.F.R. § 80.13 & app. A (1980).

The plaintiff sought and was denied courtesy staff privileges at the defendant hospital. He alleges that this denial was based upon his race and thus violated section 601. As a result of this denial, and without contacting the hospital's federal funding agency or otherwise seeking an administrative remedy, the plaintiff brought this action. As set forth above, the district court dismissed the complaint for failure to exhaust administrative remedies. 520 F.Supp. at 135.

This appeal followed.

## II.

■ Section 601 states a broad and sweeping rule of non-discrimination in any program receiving federal financial assistance:

"No person in the United States shall, on the ground of race, color or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or

activity receiving Federal financial assistance."

42 U.S.C. § 2000d (1976). Its twin purposes are clear: "to avoid the use of federal resources to support discriminatory practices . . . [and] to provide individual citizens effective protection against those practices." *Cannon v. University of Chicago,* 441 U.S. 677, 704, 99 S.Ct. 1946, 1961, 60 L.Ed.2d 560 (1979);[2] *Regents of the University of California v. Bakke,* 438 U.S. 265, 284–87, 98 S.Ct. 2733, 2745–46, 57 L.Ed.2d 750 (1978) (opinion of Powell, J.). In furtherance of the first of these purposes, Congress explicitly provided for an administrative enforcement mechanism, contained in section 602,[3] by which the funding agency attempts to secure voluntary compliance and, failing that, is empowered to terminate the violator's federal funding. Under the regulations promulgated pursuant to this section, an aggrieved individual may file a complaint with the funding agency[4] but has no role in the investigation or adjudication, if any, of the complaint.[5] The only remedies contemplated by the language of the Act and the

**2.** The *Cannon* Court recognized that Title IX of the Civil Rights Act of 1964, which was at issue in that case, "was patterned after Title VI. . . ." 441 U.S. at 694, 99 S.Ct. at 1956. Thus, the courts have consistently held the language of *Cannon* to be applicable in discussions of Title VI. *See Pushkin v. Regents of the University of Colorado,* 658 F.2d 1372 (10th Cir. 1981); *Camenisch v. University of Texas,* 616 F.2d 127 (5th Cir. 1980), *vacated on other grounds and remanded,* 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981); *N.A.A.C.P. v. Medical Center, Inc.,* 599 F.2d 1247 (3d Cir. 1979).

**3.** Section 602 provides in pertinent part:
"Compliance with any requirement adopted pursuant to this section may be effected (1) by the termination of or refusal to grant or to continue assistance under such program or activity to any recipient as to whom there has been an express finding on the record, after opportunity for hearing, of a failure to comply with such requirement, but such termination or refusal shall be limited to the particular political entity, or part thereof, or other recipient as to whom such a finding has been made and, shall be limited in its effect to the particular program, or part thereof, in which such noncompliance has been so found, or (2) by any other means authorized by law: Provided, however, That no such action shall be taken until the department or

agency concerned has advised the appropriate person or persons of the failure to comply with the requirement and has determined that compliance cannot be secured by voluntary means."
42 U.S.C. § 2000d–1 (1976).

**4.** *See* 45 C.F.R. § 80.7(b) (1980). This section provides:
"(b) *Complaints.* Any person who believes himself or any specific class of individuals to be subjected to discrimination prohibited by this part may by himself or by a representative file with the responsible Department official or his designee a written complaint. A complaint must be filed not later than 180 days from the date of the alleged discrimination, unless the time for filing is extended by the responsible Department official or his designee."

**5.** *See* 45 C.F.R. § 80.9(d) (1980). The regulations state that the funding termination hearing shall be held "in conformity with section 5–8 of the Administrative Procedure Act" and that "the *Department and the applicant or recipient* shall be entitled to introduce all relevant evidence on the issues. . . ." *Id.* (emphasis added). There is no provision for participation by an individual complainant.

320

Regulations are voluntary compliance and funding termination. There is no provision for a remedy for the victim of the discrimination, such as injunctive relief or damages.[6] Section 603 of the Act provides for judicial review of funding termination decisions.[7]

■ Since the enactment of Title VI, the courts have found that Congress intended to protect the interests of individual discriminatees by implying a private cause of action for injunctive relief under section 601. *Cannon v. University of Chicago*, 441 U.S. at 706 n.40, 99 S.Ct. at 1962 n.40 (citing cases).[8] This court explicitly recognized such a cause of action in *N.A.A.C.P. v. Medical Center, Inc.*, 599 F.2d 1247, 1250–58

(3d Cir. 1979).[9] In doing so, we specifically rejected the argument that the rights conferred by section 601 are dependent upon or limited by the funding termination procedure of section 602 or the judicial review provisions of section 603. *Id.* at 1253–55.[10] The court made a detailed analysis of the legislative history and concluded that, while there was little or no dispute over section 601, there was substantial disagreement over the propriety of using funding termination as an enforcement tool because of its potential for abuse. Thus, the court found that

"These considerations led to the enactment of sections 602 and 603. Congress was concerned with limiting the power of

6. *Compare* 42 U.S.C. § 2000d–1 (1976) (Title VI funding termination procedure) *with* 42 U.S.C. § 2000e–5 (1976) (Title VII enforcement provisions granting broad authority to the EEOC to seek individual remedies in employment discrimination cases).

7. *See* 42 U.S.C. § 2000d–2 (1976). Section 603 provides:

"Any department or agency action taken pursuant to section 2000d–1 of this title shall be subject to such judicial review as may otherwise be provided by law for similar action taken by such department or agency on other grounds. In the case of action, not otherwise subject to judicial review, terminating or refusing to grant or to continue financial assistance upon a finding of failure to comply with any requirement imposed pursuant to section 2000d–1 of this title, any person aggrieved (including any State or political subdivision thereof and any agency of either) may obtain judicial review of such action in accordance with chapter 7 of Title 5, and such action shall not be deemed committed to unreviewable agency discretion within the meaning of that chapter."

Although it is not clear from this language whether a decision not to terminate funding is reviewable or whether an individual beneficiary can ever be a "person aggrieved" within the meaning of this section, *see Cannon v. University of Chicago*, 441 U.S. at 707 n.41, 99 S.Ct. at 1963 n.41; *N.A.A.C.P. v. Medical Center, Inc.*, 599 F.2d at 1254 n.27, it is settled that a private plaintiff has no cause of action under section 602 against the funding agency to compel funding termination. *N.A.A.C.P. v. Medical Center, Inc.*, 599 F.2d at 1254 n.27.

8. In *Regents of the University of California v. Bakke*, 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978), another Title VI case, the Court simply assumed, without deciding, that a pri-

vate cause of action existed because the lower courts in that case had done so. *Id.* at 281–84, 98 S.Ct. at 2743–45.

9. Although *Wilmington Medical Center* held that intended beneficiaries of a federally funded program have a private cause of action for declaratory and injunctive relief under section 601, it is not clear whether the plaintiff here stands in the position of an intended beneficiary. We note that other circuits that have addressed the question of whether section 601 provides a cause of action for employment discrimination have required proof that the primary purpose of the funding was to provide employment. *See, e.g., Ass'n Against Discrimination v. City of Bridgeport*, 647 F.2d 256, 275 (2d Cir. 1981) (applying 42 U.S.C. § 2000d–3). *Cf. Carmi v. Metropolitan St. Louis Sewer Dist.*, 620 F.2d 672 (8th Cir.), *cert. denied*, 449 U.S. 892, 101 S.Ct. 249, 66 L.Ed.2d 117 (1980); *Trageser v. Libbie Rehabilitation Center*, 590 F.2d 87 (4th Cir. 1978), *cert. denied*, 442 U.S. 947, 99 S.Ct. 2895, 61 L.Ed.2d 318 (1979) (rehabilitation act claim). We assume for purposes of this appeal that the plaintiff may assert a private cause of action for denial of courtesy staff privileges, leaving for the district court to decide whether he may assert that right upon more complete development of the record.

10. We note that our *Wilmington Medical Center* decision reversed the contrary decision of the district court, *N.A.A.C.P. v. Wilmington Medical Center*, 426 F.Supp. 919 (D.Del.1977), *rev'd*, 599 F.2d 1247 (3d Cir. 1979), which was relied upon by the district court in this case to support its broad conclusion that "[p]laintiff's failure to seek administrative redress of his Title VI claims requires dismissal of the present complaint." 520 F.Supp. at 135.

federal agencies to bring about compliance with section 601, not with limiting private rights under section 601. That sections 602 and 603 are limits on agencies, and not on rights, is repeatedly made clear in the legislative proceedings.

"To imply a private cause of action, we must find that such a cause would be consistent with the underlying purposes of the legislative scheme. A private cause of action under Title VI to seek declaratory and injunctive relief is entirely consistent with the legislative scheme. We find it impossible to square the plaintiffs' peripheral role in the section 602 and 603 process with their critical status as protected beneficiaries under section 601, unless section 601 is read to include a right of action distinct from the limitations of sections 602 and 603. The very fact that private parties are normally precluded from advancing their section 601 rights before the administrative agency makes more compelling the implication of a private remedy under Title VI. As the Supreme Court has noted, when there is a legal right without a legal remedy, the right has little meaning."

*Id.* at 1254–55 (footnotes and citations omitted).

Thus, the argument in favor of an exhaustion requirement—potential interference with the administrative enforcement scheme of sections 602 and 603—is precisely the argument rejected by this court in *Wilmington Medical Center.* Indeed, the court explicitly stated that "we hold that there exists a private cause of action under section 601 of Title VI which may be asserted without preliminary recourse to agency remedial procedures. . . ." 599 F.2d at 1250 n.10. *See also id.* at 1249 n.6. While it might be possible to narrowly distinguish this case on the ground that the exhaustion issue was not before the *Wilmington Medical Center* court, we are satisfied that the exhaustion principle announced there is a sound one. Further, the Supreme Court in *Cannon* treated Title IX as identical in both

structure and policy to Title VI [11] and went on to discuss at length, although arguably in dictum, that administrative exhaustion is not required under Title IX. The Court observed:

"It has been suggested that, at least in the absence of an exhaustion requirement, private litigation will interfere with HEW's enforcement procedures under § 902 of Title IX. The simple answer to this suggestion is that the Government itself perceives no such interference under the circumstances of this case, and argues that if the possibility of interference arises in another case, appropriate action can be taken by the relevant court at that time. . . .

"In addition, Congress itself was apparently not worried about such interference when it passed Title IX. . . .

"True, this Court has sometimes refused to imply private rights of action where administrative or like remedies are expressly available. . . . But it has never withheld a private remedy where the statute explicitly confers a benefit on a class of persons and where it does not assure those persons the ability to activate and participate in the administrative process contemplated by the statute. . . . As the Government itself points out in this case, Title IX not only does not provide such a mechanism, but the complaint procedure adopted by HEW does not allow the complainant to participate in the investigation or subsequent enforcement proceedings. Moreover, even if those proceedings result in a finding of a violation, a resulting voluntary compliance agreement need not include relief for the complainant. . . . Furthermore, the agency may simply decide not to investigate—a decision that often will be based on a lack of enforcement resources, rather than on any conclusion on the merits of the complaint. . . . In that case, if no private remedy exists, the complainant is relegated to a suit under the Administrative Procedure Act to compel the agency to investigate and cut off funds. . . .

11. *See* note 2 above.

But surely this alternative is far more disruptive of HEW's efforts efficiently to allocate its enforcement resources under Title IX than a private suit against the recipient of federal aid could ever be.

"For these same reasons, we are not persuaded that individual suits are inappropriate in advance of exhaustion of administrative remedies. Because the individual complainants cannot assure themselves that the administrative process will reach a decision on their complaints within a reasonable time, it makes little sense to require exhaustion."

441 U.S. at 706–08 n.41, 99 S.Ct. at 1962–63 n.41 (citations omitted). This fairly clear indication from the Supreme Court serves to reinforce our conclusion that the current state of the law does not require the exhaustion of the agency funding termination procedures and avenues of judicial review contained in sections 602 and 603 as a prerequisite to a private action for individual injunctive relief under section 601.[12] We must therefore conclude that the decision of the district court is inconsistent with the statements found in *Wilmington Medical Center* and the teaching of the Supreme Court in *Cannon*.[13] Similarly, the district court decisions [14] holding to the contrary which were relied upon by the district court must no longer be followed to the extent that they are inconsistent with our decision today. We believe this conclusion to be in accord with recent decisions in other circuits construing section 504 of the Rehabilitation Act of 1973.[15] *See Pushkin v. Regents of the University of Colorado*, 658 F.2d 1372 (10th Cir. 1981); *Camenisch v. University of Texas*, 616 F.2d 127 (5th Cir. 1980), *vacated on other grounds and remanded*, 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981). *Pushkin* relied impliedly and *Camenisch* explicitly upon the same language from *Cannon* as this court did in *Wilmington Medical Center*. *Pushkin*, 658 F.2d at 1381–82; *Camenisch*, 616 F.2d at 134–35.

## III.

For the foregoing reasons, the judgment of the district court will be reversed and the

---

12. It also bolsters our conclusion that this result was anticipated by our *Wilmington Medical Center* decision which relied upon this precise language from *Cannon*. *See* 599 F.2d at 1254 n.27.

13. Dr. Chowdhury sought courtesy staff privileges on the hospital's medical staff, rather than "employment" as a member of the medical staff, as the dissent so indicates. Regardless, the equation made by the dissent between Title VII, a statute proscribing *employment* discrimination, and Title VI, a statute prohibiting discrimination with respect to participation in federally funded programs, is inapposite insofar as exhaustion requirements are concerned. The Title VII enforcement provisions include an explicit statutory requirement of exhaustion before a private litigant may bring a court action. *See* 42 U.S.C. § 2000e–5(f)(1). No such requirements were contemplated or enacted by Congress for application in the Title VI context. *Cf. Cannon* (Title IX). Moreover, unlike Title VI, Title VII explicitly provides administrative enforcement powers entirely suitable for resolving individual claims of discrimination. Under Title VII, the EEOC is empowered to bring civil suits seeking reinstatement, back pay, and injunctive relief. 42 U.S.C. § 2000e–5(g). In contrast, while certain regulations have been promulgated looking toward administrative resolution of disputes, see 45 C.F.R. § 80.7, the termination of federal funding, which is the only real administrative weapon under Title VI, is completely inadequate for providing relief to individual complainants. Indeed, we suggest that the very last sanction Dr. Chowdhury would encourage would be the cessation of federal funding which might shut down the hospital, thereby depriving him of any opportunity to join its staff.

14. *See Santiago v. City of Philadelphia*, 435 F.Supp. 136 (E.D.Pa.1977); *N.A.A.C.P. v. Wilmington Medical Center*, 426 F.Supp. 919 (D.Del.1977), *rev'd*, 599 F.2d 1247 (3d Cir. 1979); *Johnson v. County of Chester*, 413 F.Supp. 1299 (E.D.Pa.1976). We note that none of the district courts in these cases had the benefit of our *Wilmington Medical Center* decision. Further, we point out that *Martin v. Easton Publishing Co.*, 478 F.Supp. 796 (E.D. Pa.1979), which was also relied upon by the district court, is a Title VII case and is thus clearly distinguishable. *See* note 6 above.

15. In *Wilmington Medical Center*, we held that "[s]ection 504 is virtually identical to Title VI and was consciously intended by Congress to track that statute." 599 F.2d at 1258, *citing* S.Rep.No. 93–1297, 93rd Cong., 2d Sess. 39–40, *reprinted in* [1974] U.S.Code Cong. & Ad.News 6373, 6390.

case remanded for further proceedings consistent with this opinion.[16]

ALDISERT, Circuit Judge, dissenting.

Although I agree with the majority that whether appellant is entitled under Title VI to assert a private cause of action for employment discrimination was not settled by *NAACP v. Medical Center, Inc.*, 599 F.2d 1247 (3d Cir. 1979), *see* maj. op. at 320 n.9, and still is an open question, I would affirm the district court's dismissal of the complaint for failure to exhaust the conciliation procedures provided by regulations of the Department of Health and Human Services.

I cannot agree that this case is controlled by either *Medical Center or Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), and I conclude that the rule announced by the majority conflicts with public policy as expressed by Congress and with sound principles of judicial administration, a conclusion shared by every reported decision of the district courts in this circuit. *See Chowdhury v. Reading Hospital and Medical Center*, 520 F.Supp. 134 (E.D.Pa.1981) (Troutman, J.); *Santiago v. City of Philadelphia*, 435 F.Supp. 136 (E.D.Pa.1977) (Lord, C. J.); *NAACP v. Wilmington Medical Center, Inc.*, 426 F.Supp. 919 (D.Del.1977) (Latchum, C. J.), *rev'd on other grounds*, 599 F.2d 1247 (3d Cir. 1979); *Johnson v. County of Chester*, 413 F.Supp. 1299 (E.D.Pa.1976) (Luongo, J.). I believe that the four district

judges in this circuit who have considered this issue are right, and that the majority in this case are wrong.

## I.

The majority would follow bare dictum set forth in this court's first *Medical Center* decision. That case required us to decide whether individuals in a protected class, intended beneficiaries of a federal funding program aiding the hospital, possessed a private cause of action under Title VI and its analog in the Rehabilitation Act, 29 U.S.C. § 794. By the time that case reached this court, the plaintiffs had already exhausted their administrative remedies, as they were ordered to do by Chief Judge Latchum. *See NAACP v. Wilmington Medical Center*, 426 F.Supp. at 924. Even though the question of exhaustion was moot, the *Medical Center* panel of this court stated at note 10 that "we hold that there exists a private cause of action under section 601 of Title VI which may be asserted without preliminary recourse to agency remedial procedures . . . ," 599 F.2d at 1250 n.10, and at note 6, that "recourse to the administrative remedy is not in any event a prerequisite to the assertion of the plaintiffs' private cause of action," *id.* at 1249 n.6, citing in both instances *Cannon v. University of Chicago*, 441 U.S. at 706 n.41, 99 S.Ct. at 1962 n.41.

**16.** We share the dissent's perturbation about the floodtide of litigation in the federal courts which in turn has led to record caseloads in the courts of appeals. Nevertheless, we conclude that requiring administrative exhaustion would undermine, rather than further, the goal of efficient judicial administration. Little can be gained by compelling individual plaintiffs to engage in administrative procedures when the existing administrative remedies cannot provide the relief they seek and when the agency responsible for implementing those remedies has time and again insisted that its lack of appropriate powers and resources render it incapable of properly resolving such claims under either Title VI, Title IX, or section 504, see *Cannon v. University of Chicago*, 441 U.S. 677, 708 n.42, 99 S.Ct. 1946, 1963 n.42, 60 L.Ed.2d 560 (1979); *Camenisch v. University of Texas*, 616 F.2d 127, 136 (5th Cir. 1980), *vacated on*

*other grounds and remanded*, 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981); *Patton v. Dumpson*, 498 F.Supp. 933, 939–40 (S.D.N.Y. 1980). In such circumstances, the federal courts cannot and should not turn their back on litigants who seek relief pursuant to congressionally mandated programs which proscribe the very activities in which the charged institution is engaging.

Even more fundamentally, the issue in this case is not whether we believe that an exhaustion requirement would serve a salutary purpose. The issue is whether Congress, in implying a cause of action, also implied an exhaustion requirement. Our conclusion is that the same rationale which first supported the recognition of this implied cause of action compels the conclusion that Congress did not intend it to be subject to administrative exhaustion.

Gratuitous statements such as these bind neither the trial courts nor subsequent panels of this court. *See* United States Court of Appeals for the Third Circuit, Internal Operating Procedures, Ch. VIII C. They are classic *obiter dictum*: "statement[s] of law in the opinion which could not logically be a major premise of the selected facts of the decision." [1] Dictum is the antithesis of precedent. As we have explained,

> The essence of the common law doctrine of precedent or *stare decisis* is that the rule of the case creates a binding legal precept. The doctrine is so central to Anglo-American jurisprudence that it scarcely need be mentioned, let alone discussed at length. A judicial precedent attaches a specific legal consequence to a detailed set of facts in an adjudged case or judicial decision, which is then considered as furnishing the rule for the determination of a subsequent case involving identical or similar material facts and arising in the same court or a lower court in the judicial hierarchy.

*Allegheny Gen. Hospital v. NLRB*, 608 F.2d 965, 969–70 (3d Cir. 1979). *See also Addonizio v. United States*, 573 F.2d 147, 151 (3d Cir. 1978), *rev'd on other grounds*, 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979); *Institute for Scientific Information, Inc. v. United States Postal Service*, 555 F.2d 128, 130 (3d Cir. 1977).

Litigants should not totally disregard dictum, of course, because it indicates the direction or framework of an opinion writer's thought, and thereby serves as a tool for predicting what the court might do when the issue is properly presented. But dictum, unlike holding, does not have the strength of a decision "forged from actual experience by the hammer and anvil of litigation," [2] a fact to be considered when assessing its utility in the context of an actual controversy. Similarly, appellate courts must be cautious to avoid promulgating unnecessarily broad rules of law. As Lord Atkin observed,

> [I]t is of particular importance to guard against the danger of stating propositions of law in wider terms than is necessary, lest essential factors be omitted in the wider survey and the inherent adaptability of . . . law be unduly restricted. For this reason it is very necessary in considering reported cases in the law . . . that the actual decision alone should carry authority, proper weight, of course, being given to the dicta of the judges.

*Donoghue v. Stevenson* [1932] A.C. 562, 584. The common law tradition is one that depends for its stability on the gradual, case-by-case method of developing rules and from the rules, broader legal precepts. Although I can indulge a litigant for relying on dictum when he does not have an otherwise persuasive argument, a court that accords dictum controlling weight drains that tradition of its strength and undermines its legitimacy.

Applying the foregoing precepts to the *Medical Center* opinion leads inexorably to the conclusion that it does not control this case. It is not a precedent for the rule that a doctor who has been denied courtesy staff privileges in a hospital receiving federal financial assistance may sue the hospital in federal court without exhausting available Title VI administrative remedies; at most, *Medical Center* holds that *intended beneficiaries* of a federal program who have exhausted their administrative remedies have a private cause of action for discrimination under Title VI and its Rehabilitation Act analog. Statements in the majority opinion in the instant case indicating that *Medical Center* settled both issues are simply incorrect.

Nor can I conclude that footnote 41 of *Cannon v. University of Chicago*, the putative precedent on which the majority and the *Medical Center* dictum rely, is of greater legitimacy. I concede that *Cannon*, like *Medical Center*, includes language which, considered *in vacuo*, supports the majority's assertion that non-exhaustion in this employment discrimination case is a "sound"

1. R. Cross, Precedent in English Law 80 (2d ed. 1968).

2. Stone, *The Common Law in the United States*, 50 Harv.L.Rev. 4, 7 (1936).

rule. *See* maj. op. at 320–321. But there, as in *Medical Center*, the question of exhaustion was not before the court. Although Justice Stevens' opinion for the court noted that plaintiff had commenced but not exhausted available administrative procedures, 441 U.S. at 680 n.2, 99 S.Ct. at 1949 n.2, the narrow question presented for decision was whether an applicant excluded from a federally funded educational program solely because of her sex has a cause of action under Title IX, 20 U.S.C. § 1681.[3] The narrow scope of that decision was underscored by the court of appeals' subsequent affirmance of the district court's second order dismissing the case for failure to state a claim, this time because it was evident that the plaintiff could not prove discriminatory intent. *Cannon v. University of Chicago*, 648 F.2d 1104 (7th Cir.), *cert. denied*, —— U.S. ——, 102 S.Ct. 981, 71 L.Ed.2d 117 (1981). *See Cannon*, 441 U.S. at 680 n.2, 99 S.Ct. at 1949 n.2. Whether exhaustion should be a prerequisite to suit, like the question of the standard of proof, was never decided.

## II.

Moreover, *Cannon* arose in a materially different factual context. There the plaintiff was a medical school applicant alleging that she was denied acceptance at the defendant schools because of her sex. Title IX, on which she premised her cause of action, deals explicitly with admissions to graduate programs receiving federal funds, 20 U.S.C. § 1681, and thus the statute explicitly extended its protection to her and to the interest she alleged the grantees had infringed. In the present case, it is yet to be determined if Dr. Chowdhury is an intended beneficiary of either Title VI or the federal financial assistance received by the hospital. As the majority observe:

> We note that other courts that have addressed the question of whether 601 provides a cause of action for employment discrimination have required proof that the primary purpose of the funding was to provide employment.

Maj. op. at 320 n.9. Dr. Chowdhury would be in an entirely different position were he a patient alleging denial of services because of his race; instead, he is seeking employment as a member of the medical staff. Therefore, unlike *Cannon*, which implicated an express Congressional policy to protect applicants for admission to federally assisted graduate programs from sex discrimination, this case requires consideration of Congress' policy regarding claims of employment discrimination. Congress has expressly prohibited federal agencies and departments from interfering with employment practices under the guise of Title VI "except where a primary objective of the Federal financial assistance is to provide employment." 42 U.S.C. § 2000d–3. Every court of appeals that has considered the question has agreed that this section and its analogs bar private actions for employment discrimination as well. *See, e.g., Ass'n Against Discrimination v. City of Bridgeport*, 647 F.2d 256, 275 (2d Cir. 1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 1611, 71 L.Ed.2d 847 (1982); *Carmi v. Metropolitan St. Louis Sewer Dist.*, 620 F.2d 672 (8th Cir.), *cert. denied*, 449 U.S. 892, 101 S.Ct. 249, 66 L.Ed.2d 117 (1980) (Rehabilitation Act); *Trageser v. Libbie Rehabilitation Center Inc.*, 590 F.2d 87 (4th Cir. 1978), *cert. denied*, 442 U.S. 947, 99 S.Ct. 2895, 61 L.Ed.2d 318 (1979) (Rehabilitation Act).[4]

**3.** Footnote 41 of *Cannon* was written to support the discussion of whether a private remedy would frustrate the legislative scheme of Title IX, the third factor in the familiar test articulated in *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975), for inferring private remedies from statutes not explicitly providing them. The court was not required to address the exhaustion question to conclude that a private remedy would not be inconsistent with Title VI, although it chose to do so in the footnotes. In text, the court simply noted that the statutory enforcement scheme would not be impeded, and could be assisted by a private remedy. I find no inconsistency, therefore, in concluding that a private remedy would not frustrate the legislative scheme, but that private action should await administrative conciliation efforts, the preferred means of settling disputes.

**4.** For the same reasons I do not find persuasive either *Pushkin v. Regents of the Univ. of Colorado*, 658 F.2d 1372 (10th Cir. 1981), or *Camen-*

I agree with these holdings and would extend them to denial of courtesy staff privileges *a fortiori* when, as in this case, the plaintiff has not alleged that providing staff privileges is relevant to the objective of the funding, let alone whether it is the primary objective of the federal assistance. Moreover, Congress has articulated clearly a policy favoring administrative conciliation over immediate private civil litigation in discrimination cases touching employment relationships. *EEOC v. E. I. duPont de Nemours & Co.*, 516 F.2d 1297 (3d Cir. 1975); *Fekete v. U. S. Steel Corp.*, 424 F.2d 331 (3d Cir. 1970). *See Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398 (3d Cir.), *cert. denied*, 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1976). As this court has noted, the preliminary steps of a Title VII claim "are essential parts of the statutory plan, designed to correct discrimination through administrative conciliation and persuasion if possible, rather than by formal court action." *Id.* I simply cannot accept as consistent with the framework of discrimination law that a plaintiff may deliberately bypass available administrative remedies when claiming employment discrimination under Title VI, while he is required by the same facts to exhaust those procedures under Title VII. I am confident that Congress did not intend to allow Dr. Chowdhury to do under Title VI what he is barred from doing under Title VII.

I reject the majority's assertion that Dr. Chowdhury does not possess a meaningful remedy under 45 C.F.R. § 80.7. Indeed,

congruent with the EEOC emphasis on administrative conciliation and persuasion, HHS Title VI regulations provide for institution of a complaint by any person who believes that he has been subjected to discrimination "not later than 180 days from the date of the illegal discrimination." 45 C.F.R. 80.7(b).[5] Those regulations specifically provide for informal resolution of the dispute whenever possible. *Id.* at 80.7(d).[6] Although the complainant is not expressly given a right to participate in the conciliation procedures, such a right does not exist under Title VII either. *See* 42 U.S.C. § 2000e–5. Rather, the emphasis in both schema is on informal resolution of disputes, with adversarial procedures regarded as a last resort.

My view in this case is consistent with what I have previously expressed regarding the relationship between employment discrimination cases brought under Title VII and those brought under 42 U.S.C. § 1981:

> I believe that there will be more predictability and reckonability to the law of employment discrimination, more understanding and societal acceptability by the lay public, including putative employees, employees, and employers alike, if there is consistency in the judicial interpretation of the two statutes [implicating employment discrimination].

*Croker v. Boeing Co.*, 662 F.2d 975, 1002 (3d Cir. 1981) (in banc) (Aldisert, J., dissenting in part).

In their rush to let Dr. Chowdhury into court, the majority have unnecessarily

*isch v. University of Texas*, 616 F.2d 127 (5th Cir. 1980), *vacated on other grounds*, 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981). Both cases were brought under the Rehabilitation Act, 29 U.S.C. § 794; *Pushkin* was brought by an applicant to a graduate psychiatric program and *Camenisch* was brought by a deaf graduate student seeking to have an interpreter appointed at the university's expense.

5.  (b) Complaints. Any person who believes himself or any specific class of individuals to be subjected to discrimination prohibited by this part may by himself or by a representative file with the responsible Department official or his designee a written complaint. A complaint must be filed not later than 180 days from the date of the alleged discrimination, unless the

time for filing is extended by the responsible Department official or his designee.

6.  (d) Resolution of matters. (1) If an investigation pursuant to paragraph (c) of this section indicates a failure to comply with this part, the responsible Department official or his designee will so inform the recipient and the matter will be resolved by informal means whenever possible. If it has been determined that the matter cannot be resolved by informal means, action will be taken as provided for in § 80.8.

(2) If an investigation does not warrant action pursuant to subparagraph (1) of this paragraph the responsible Department official or his designee will so inform the recipient and the complainant, if any, in writing.

opened the doors to premature, and often needless, litigation. It is one thing for federal judges to complain that Congress has increased the federal jurisdiction unnecessarily, and that our caseload has increased astronomically,[7] but it is quite another for that load to increase by means of self-inflicted wounds. By directing the plaintiff to ignore the opportunity for administrative resolution of this dispute, the majority are doing just that.

### III.

For all the foregoing reasons I dissent, and would affirm the judgment of the district court.

7. In the year I joined the court, 1968, there were 7,638 cases filed in the district courts in this judicial circuit, and 658 appeals to this court. Last year there were 15,041 and 2,013 filings respectively. *See* Annual Reports of Director, Administrative Office of U.S. Courts, tables C3, B1 (1968 & 1981).