James **FYNES** and John George **Milliken**

v.

Caspar **WEINBERGER,** Secretary of Defense and Rear Admiral J.W. Austin, Commandant, Philadelphia Naval Base and Anthony Santini, Staffing Specialist, Philadelphia Naval Shipyard.

Civ. A. No. 85–0427.

United States District Court, E.D. Pennsylvania.

July 22, 1985.

Joseph D. Shein, Philadelphia, Pa., for plaintiffs.

Joan Garner, Asst. U.S. Atty., Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

Presently before this court is a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure by defendants, Casper Weinberger, Secretary of Defense, Rear Admiral J.W. Austin, Commandant at the Philadelphia Naval Base, and Anthony Santini, Staffing Specialist. The underlying action was initiated by plaintiffs, James Fynes and John George Milliken, based on alleged violations by the defendants of the Rehabilitation Act of 1973, 29 U.S.C. § 794,[1] the Civil Rights Act of 1964, 42 U.S.C. § 1983, the Administrative Procedure Act, 5 U.S.C. §§ 551, 702, and the Fifth and Fourteenth Amendments of the United States Constitution. While defendants' motion for summary judgment is directed to all five (5) claims, we shall grant it only as to the § 1983 claim.

Plaintiff, Fynes, had been employed at the Philadelphia Navy Yard as an insulator and mechanic for the past nine years. He alleges that as a result of such employment, he contracted "asbestos-caused disease." (Plaintiffs' complaint, ¶ 7).

Plaintiff, Milliken, had been employed at the Philadelphia Navy Yard for eleven (11) years when he, too, alleges he became afflicted with asbestosis.

In addition to the physical symptoms suffered by both plaintiffs as a result of contracting this disease, plaintiffs have since been assigned to a "leave-without-pay" status. Plaintiffs allege that they are "handicapped" within the definition applied under the Rehabilitation Act of 1973, and further, that they have been discriminated against solely as a result of this "handicap." In addition to violations of the Rehabilitation Act, plaintiffs aver that the navy yard's alleged inability to accommodate plaintiffs' handicaps, as well as defendants' conduct in denying plaintiffs the benefits of disability status and the opportunity for restrictive employment constitute violations of the Civil Rights Act, the Administrative Procedure Act, plus the Fifth and Fourteenth Amendments.

Defendants' response avers that plaintiffs have not stated a claim upon which relief can be granted because they have not exhausted administrative remedies in advance of filing this suit. (Defendants' motion, ¶ 2). In addition, defendants allege that there are no genuine issues of material fact, and that plaintiffs have failed to name the head of the agency as the defendant, thus requesting judgment as a matter of law.

On a motion for summary judgment, the record is liberally construed in favor of the party opposing the motion, and all doubts are resolved against the movant, *Fireman's Ins. Co. of Newark, N.J. v. Dufresne*, 676 F.2d 965, 969 (3d Cir.1982); the role of the court is only to decide whether there is an issue of fact to be decided, not to decide the factual issue, and the barest admissible evidence in opposition to the motion is a basis for denying the motion. *Fidelity Leasing Corp. v. Dun & Bradstreet, Inc.*, 494 F.Supp. 786, 788 (E.D.Pa.

---

1. 29 U.S.C. § 794 and Pub.L. 93–112, Title V, § 504 [Sept. 26, 1973, 87 Stat. 394] both refer to the same section of the Rehabilitation Act and are used interchangeably throughout this opinion.

1980) *citing Remak v. Quinn,* 611 F.2d 36, 37 (3d Cir.1979). Summary judgment should be granted only where it is clear that there is no genuine dispute about what either the facts are or the inferences to be drawn from such facts. *Teleprompter of Erie, Inc. v. City of Erie,* 567 F.Supp. 1277, 1280 (W.D.Pa.1983). Even though there may be no dispute about the basic facts, summary judgment will be inappropriate where plaintiffs disagree on the inferences which may reasonably be drawn from those facts. *Id.*

■ Plaintiffs' first allegation rests on Section 794 of the Rehabilitation Act of 1973. Section 794 reads:

No otherwise qualified handicapped in the United States, as defined in section 706(6) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. 29 U.S.C. § 794.[2]

Section 794a proscribes the remedies afforded individuals who have alleged violations under § 794. Section 794a reads:

(a)(2) The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 [42 U.S.C.A. 2000d et seq.] shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title. 29 U.S.C. § 794a(a)(2).

Title VI of the Civil Rights Act of 1964 [42 U.S.C. 2000d et seq.] which is the remedial measure advanced by section 794 above, reads as follows:

No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. 42 U.S.C. § 2000d.

The purpose of enforcing this section is clearly "to avoid the use of federal resources to support discriminatory practices ... [and] to provides individual citizens effective protection against those practices." *Chowdhury v. Reading Hospital & Medical Center,* 677 F.2d 317, 319 (3d Cir.1982) [*quoting Cannon v. University of Chicago,* 441 U.S. 677, 704, 99 S.Ct. 1946, 1961, 60 L.Ed.2d 560 (1979)], *cert. denied* 463 U.S. 1229, 103 S.Ct. 3569, 77 L.Ed.2d 1411 (1983). To further the above stated purposes, Congress provided for an administrative enforcement mechanism, contained in section 602,[3] by which the funding agen-

---

**2.** Section 706(6), which has been designated § 706(7) by the 1978 amendments to the Rehabilitation Act, reads as follows:

(7)(A) Except as otherwise provided in subparagraph (B), the term "handicapped individual" means any individual who (i) has a physical or mental disability which for such individual constitutes or results in a substantial handicap to employment and (ii) can reasonably be expected to benefit in terms of employability from vocational rehabilitation services provided pursuant to subchapters I and III of this chapter.

(B) Subject to the second sentence of this subparagraph, the term "handicapped individual" means, for purposes of subchapters IV and V of this chapter, any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a second of such an impairment, or (iii) is regarded as having such an impairment. For purposes of sections 793 and 794 of this title as such sections relate to employment, such term does not include any individual who is an alcoholic or drug abuser whose current use of alcohol or drugs prevents such individual from performing the duties of the job

in question or whose employment, by reason of such current alcohol or drug abuse, would constitute a direct threat to property or the safety of others. 29 U.S.C. § 706(7).

**3.** Section 602 provides in pertinent part:

Compliance with any requirement adopted pursuant to this section may be effected (2) by the termination of or refusal to grant or to continue assistance under such program or activity to any recipient as to whom there has been an express finding on the record, after opportunity for hearing, of a failure to comply with such requirement, but such termination or refusal shall be limited to the particular political entity, or part thereof, or other recipient as to whom such a finding has been made and, shall be limited in its effect to the particular program, or part thereof, in which such noncompliance has been so found, or (2) by any other means authorized by law: Provided, however, That no such action shall bed taken until the department or agency concerned has advised the appropriate person or persons of the failure to comply with the requirement and has determined that compliance cannot be secured

cy attempts to secure voluntary compliance and, failing that, is empowered to terminate the violator's federal funding. 677 F.2d at 319. Under the regulations promulgated pursuant to this section, an aggrieved individual may file a complaint with the funding agency but has no role in the investigation or adjudication, if any, of the complaint. *Id.* The only remedies contemplated by the language of the Act and the Regulations are voluntary compliance and funding termination. *Id.* at 320. There is no provision for a remedy for the victim of the discrimination, such as injunctive relief or damages. *Id.*

Therefore, a private individual has no cause of action under § 602 of the civil rights statute which provides for agency enforcement of discrimination prohibition by terminating funding for federally-assisted programs against funding agency to compel funding termination. 677 F.2d at 318. However, a private cause of action for injunctive relief has been recognized under § 601 of the Civil Rights Act, which must be read in conjunction with § 504 of the Rehabilitation Act, upon which this instant action is grounded.

> 29 U.S.C. § 794a(a)(2) provides that the procedures set forth for enforcement of Title VI of the 1964 Civil Rights Act, 42 U.S.C. § 2000d et seq. shall be available for enforcement of the Rehabilitation Act. Under 42 U.S.C. § 2000d–1, an administrative examination of the practices of a recipient of federal assistance may lead to a suspension or termination of the federal assistance; such relief, however, does not include or encompass equitable relief for the affected individual. Similarly, ... the regulations permitting ... termination of federal funding do not provide a means by which an individual can obtain personal redress for a violation of § 504. *See Whitaker v. Board of*

*Education,* 461 F.Supp. 99 (E.D.N.Y. 1978). This would be an empty remedy indeed for the plaintiff ... [seeking a private remedy].... In other words he would make no progress in this endeavor by seeking to compel the cutting off of funds generally to the ... [federally-assisted recipient]....

*Pushkin v. Regents of University of Colorado,* 658 F.2d 1372, 1381 (10th Cir.1981). "The very fact that private parties are normally precluded from advancing their section 601 rights before the administrative agency makes more compelling the implication of a private remedy under Title VI. As the Supreme Court has noted, when there is a legal right without a legal remedy, the right has little meaning." *N.A.A. C.P. v. Medical Ctr., Inc.,* 599 F.2d 1247, 1254–5 (3d Cir.1979);[4] *see also Rosado v. Wyman,* 397 U.S. 397, 420, 90 S.Ct. 1207, 1221, 25 L.Ed.2d 442 (1970).

In the case *sub judice*, defendants argue that exhaustion of administrative remedies is required as a precaution to avoid interference with the administrative mechanisms governing the alleged violations by a federally-assisted agency. This argument is the same as that which was rejected by the courts in *N.A.A.C.P. v. Medical Ctr., Inc., supra* and *Chowdhury, supra.* The court in *Chowdhury* quoted the former case, wherein that court explicitly stated that "we hold that there exists a private cause of action under section 601 of Title VI which may be asserted without preliminary recourse to agency remedial procedures...." *Chowdhury* at 321 *quoting N.A.A.C.P. v. Medical Ctr., Inc.,* 599 F.2d at 1250, n. 10; *see also* 599 F.2d at 1249, n. 6; *Cannon v. University of Chicago,* 441 U.S. 677, 707–08, n. 41, 99 S.Ct. 1946, 1963 n. 41, 60 L.Ed.2d 560 (1979).[5] The court in *Meiner v. State of Mo.,* 673 F.2d 969 (8th Cir.1982) *cert. denied,* 459 U.S. 909, 103

---

by voluntary means. 42 U.S.C. § 2000d–1 (1976).

**4.** This case has been remanded and later appealed on numerous occasions; however, the opinions filed subsequent to that cited in the case *sub judice* did not alter or amend the conclusion cited regarding availability of a private cause of action.

**5.** The Third Circuit has consistently held that administrative exhaustion is not a pre-requisite to private suit under Title VI. *See also Cheyney State College Faculty v. Hufstedler,* 703 F.2d 732, 737 (3d Cir.1983); *Latino Project, Inc. v. City of Camden,* 701 F.2d 262, 265 (3d Cir.1983).

S.Ct. 215, 74 L.Ed.2d 171 (1982) also held that:

> ... administrative enforcement remedies provided under the Rehabilitation Act are of little comfort to the plaintiff. The regulations adopted by the Department of Health and Human Services (HHS), incorporating procedures applicable to Title VI of the 1964 Civil Rights Act ... provide administrative sanctions such as the termination of funds for acts of discrimination.... No provision is made for the complainant to furnish evidence or otherwise participate in the agency investigation.... There is no provision for HHS to issue a binding order that damages be paid to an individual who has been injured by reason of a violation of § 504.

*Id.* at 978. The court also found "that administrative remedies are inadequate to vindicate individual rights...." *Id.*[6]

In light of the above cited opinions, including those of *Chowdhury, supra* and *N.A.A.C.P. v. Medical Ctr., Inc.,* of the Third Circuit, we are convinced that plaintiffs' action in district court is not premature and that we, indeed, have jurisdiction to hear the matters presented.

The question then becomes whether there exists before this court a triable issue of fact sufficient to defeat a motion for summary judgment.

A private right of action has been established under the provisions of the Rehabilitation Act that no otherwise qualified handicapped individual shall, solely by reason of his handicap be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving federal assistance. *Pushkin* at 1373.

> ... section 504 sets forth its own criteria for scrutinizing claims under that statute. First, the individual is required to show that he is otherwise qualified[7] for the position sought; second the individual must show that even though he is otherwise qualified, he was rejected for the position solely on the basis of his handicap.[8]

"Once plaintiff establishes his prima facie case, defendants have the burden of going forward and proving that plaintiff was not an otherwise qualified handicapped person, that is one who is able to meet all of the program's requirements in spite of his handicap, or that his rejection from the program was for reasons other than his handicap...." *Id.* at 1387. "The plaintiff then has the burden of going forward with rebuttal evidence showing that the defendant's reasons for rejecting the plaintiff are based on misconceptions or unfounded factual conclusions, and that reasons articu-

---

**6.** Case law is divided on the issue of exhaustion as a prerequisite to a § 794 suit:

—exhaustion rejected: *Pushkin v. Regents of Univ. of Colorado, supra,* 658 F.2d 1372 at 1381 (10th Cir.1981); *Kling v. County of Los Angeles,* 633 F.2d 876, 879 (9th Cir.1980); *Camenisch v. Univ. of Texas,* 616 F.2d 127, 133–36 (5th Cir. 1980), *vacated on other grounds,* 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981).

*See also Cannon v. Univ. of Chicago, supra,* 441 U.S. at 706 n. 41, 99 S.Ct. at 1962 n. 41 (individual suits ar appropriate in advance of exhaustion in the analogous context of Title IX); *Rosado v. Wyman,* 397 U.S. 397, 406, 90 S.Ct. 1207, 1215, 25 L.Ed.2d 442 (1970) (principle of exhaustion of administrative remedies and doctrine of primary jurisdiction are not applicable where petitioners do not seek review of administrative ruling and could not participate in HEW review). Several courts have found *Cannon* dispositive as to exhaustion under § 504. *Pushkin v. Regents of the Univ. of Colorado, supra,* 658 F.2d 1372 at 1381; *Kling v. County of Los Angeles,* 633 F.2d 876, 879 (9th Cir.1980).

We are swayed by the fact that HEW has argued as amicus curiae that exhaustion should be not required as a prerequisite to private litigation under § 504. *Patton v. Dumpson,* 498 F.Supp. 933, 939 (S.D.N.Y.1980).

—exhaustion required: *McGuinness v. United States Postal Service,* 744 F.2d 1318 (7th Cir. 1984); *Gardner v. Morris,* 752 F.2d 1271 (8th Cir.1985).

**7.** In 45 C.F.R. § 84.3K, "otherwise qualified" has been defined to mean:

(1) With respect to employment, a handicapped person who, with reasonable accommodation, can perform the essential functions of the job in question....

**8.** "Handicapped individual" is defined in 29 U.S. C. § 706(7)(B) as "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment."

lated for the rejection other than the handicap encompass unjustified consideration of the handicap itself." *Id.*

■ In the case *sub judice,* we are faced initially with the undisputed fact that plaintiffs, Fynes and Milliken were unable to continue employment in their former capacities because they suffered from asbestosis or asbestos-related diseases. In fact, they were placed on leave-without-pay status as a result of their respective disabilities. We must undoubtedly conclude that this "physical impairment" [9] did, indeed, render plaintiffs handicapped within the meaning of the Rehabilitation Act.

■ Once a plaintiff shows an employer denied him employment because of physical condition, the burden of persuasion shifts to the employer to show that the criteria used are job related and that plaintiff could not safely and efficiently perform the essentials of the job. *Treadwell v. Alexander,* 707 F.2d 473 (11th Cir.1983) *citing Prewitt v. United States Postal Service,* 662 F.2d 292, 310 (5th Cir., Unit A 1981). "The Supreme Court has held in a case decided under § 504 of the Act that an 'otherwise qualified [handicapped] person is one who is able to meet all of a program's requirements in spite of his handicap.' " *Treadwell* at 477, *citing Southeastern Community College v. Davis,* 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979). A plaintiff who could perform the essentials of the job if afforded reasonable accommodation would be entitled to relief. *See Southeastern Community College v. Davis, supra.* The necessity for providing reasonable accommodation is derived from the express language of § 501(b) [10] requiring the federal government to undertake affirmative action on behalf of handicapped applicants and employees. *Treadwell* at 477–78. Other

courts have consistently held that § 504 also requires that reasonable accommodations be made on behalf of otherwise qualified handicapped employees. *See Prewitt v. United States Postal Service,* 662 F.2d 292, 307 n. 21 (5th Cir.1981). While, as previously stated, plaintiff does have to initially make a showing that his handicap can be accommodated, the burden of persuasion ultimately lies with the employer to show *inability* to accommodate.

"Factors to be considered in determining whether an accommodation would impose an undue hardship on the operation of the agency would include '(1) the overall size of the agency's program with respect to the number of employees, number and type of facilities and size of budget; (2) the type of agency operation, including the composition and structure of the agency's work force; and (3) the nature and the cost of the accommodation.' " *Bey v. Bolger,* 540 F.Supp. 910, 925 (E.D.Pa.1982) *quoting Prewitt v. United States Postal Service, supra* at 308. " . . . [T]he burden of persuasion in proving the inability to accommodate the handicapped applicant remains always on the employer." *Id.*

■ In the case *sub judice,* plaintiffs allege that the defendants were inadequate in their endeavors to accommodate plaintiffs' handicapped conditions. Defendants, on the other hand, aver that efforts were, indeed, made, albeit without successful results to the plaintiffs. Clearly, a factual issue has been raised with regard to the temerity of defendants' attempts to accommodate. Additionally, resolution of this issue is material to a determination as to whether defendants complied with the procedures specified in the Rehabilitation Act. Thus, with regard to plaintiffs' claims pur-

---

9. 45 C.F.R. § 84.3(j)(2)(i) defines "physical or mental impairment":

(i) "Physical or mental impairment" means (A) any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive, digestive; genitourinary; hemic and lymphatic; skin; and endoc-

rine; or (B) any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

10. Section 501(b) and 29 U.S.C. 791(b) refer to the same section of the Rehabilitation Act and are used interchangeably throughout this opinion.

suant to the Rehabilitation Act, summary judgment cannot be granted.

■ Plaintiffs have, in addition, asserted violations of the Civil Rights Act, 42 U.S.C. § 1983. While the Supreme Court in the celebrated case of *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980) reasoned that § 1983 "arguably provide[d] a remedy for violation of the Rehabilitation Act ...,"[11] the necessary requisites of a § 1983 action have not been met. "In order to state a claim under the Civil Rights Act '(1) the conduct complained of must have been done by some person acting under color of state law'", *Keen v. Philadelphia Daily News*, 325 F.Supp. 929, 930 (E.D.Pa.1971) *quoting Basista v. Weir*, 340 F.2d 74, 79 (3d Cir.1965), and plaintiff must state with some degree of specificity the constitutional guarantees which have been violated. *Rotolo v. Borough of Charleroi*, 532 F.2d 920, 922 (3d Cir.1976). While plaintiff has named as defendants "persons" within the definition of § 1983, plaintiff has made no showing in the case *sub judice* that the defendants were acting under color of state law. Absent such a showing, plaintiffs' claims are not cognizable under the Civil Rights Act of 1964. In the case *sub judice*, defendants are all in the employ of an agency of the federal government operating under federal law, not state law. Therefore, we grant defendants' summary judgment motion with regard to plaintiffs' § 1983 claims.

■ Plaintiffs also assert violations of § 702 of the Administrative Procedure Act (APA) in conjunction with the Fifth and Fourteenth Amendments of the United States Constitution, stating that "[t]he conduct of defendants denying the plaintiffs the opportunity to apply for restrictive employment, placing them on a status of leave-without-pay, denying them the benefits of disability status, denying them the opportunity to advance in their professions was arbitrary and capricious...." (Plaintiffs' Complaint, ¶ 27). Plaintiffs are, therefore, alleging that the defendants vio-

lated their own procedures in the handling of the matter of plaintiffs' disabilities. As we discussed *supra*, there is, indeed, a question of material fact as to whether defendants did exert sufficient efforts to afford "... reasonable accommodation to all aspects of ... placement, training, promotion, reassignment, and developmental assignment." (Defendants' Exhibit, Dept. of Navy CPI 713–A); *see* C.F.R. Part 1613.701–710. While it is true that agencies are not required to strictly adhere to all of their rules and that agencies are entitled to some measure of discretion in administering procedural rules, *see U.S. v. Caceres*, 440 U.S. 741, 754 n. 18, 99 S.Ct. 1465, 1472 n. 18, 59 L.Ed.2d 733 (1979) and *American Farm Lines v. Black Ball Freight Service et al.*, 397 U.S. 532, 538, 90 S.Ct. 1288, 1292, 25 L.Ed.2d 547 (1970), there remains a question as to what defendants actually did do to comply with the duty proscribed by the Rehabilitation Act to "reasonably accommodate" plaintiffs' conditions. Since this duty to "reasonably accommodate" is so similar to that identified in defendants' exhibit, which specifies the remedies available to an individual claiming discrimination based on a handicapped condition, the result must also be the same. We conclude that a material issue of fact is raised with regard to defendants' compliance with regulations and that defendants' motion for summary judgment on the grounds of the APA together with the Fifth and Fourteenth Amendments must be denied.

---

11. Case law is divided on the availability of § 1983 as a remedy for violations of the Rehabilitation Act. *See Pushkin v. Regents of the* *University of Colorado, supra; Medley v. Ginsberg*, 492 F.Supp. 1294 (S.D.W.Va.1980).