

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-30-1997

# Chester Residents v. Seif

Precedential or Non-Precedential:

Docket 97-1125

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Chester Residents v. Seif" (1997). *1997 Decisions.* Paper 285.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/285

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed December 30, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-1125

CHESTER RESIDENTS CONCERNED FOR QUALITY
LIVING; ZULENE MAYFIELD; CATHY MORSE; OSSIE
MORSE; KING MCDONALD; ANGELA MCDONALD;
CARLENE P. STEVENSON; LOUIS S. MORSE; RICK
OTTEN; LINDA MORSE ROTHWELL; ARTHUR H.
ROTHWELL, III; MARGARITA SANTIAGO; RICARDO
SANTIAGO*; DANIEL MURPHY; JANET WEISS; REAGAN
OTTEN; RENEE D. DALE; FRANCES ROTHWELL;
LISA GILLIAM

v.

JAMES M. SEIF, in his capacity AS SECRETARY OF THE
PENNSYLVANIA DEPARTMENT OF ENVIRONMENTAL
PROTECTION; PENNSYLVANIA DEPARTMENT OF
ENVIRONMENTAL PROTECTION; CAROL R. COLLIER, in
her capacity AS DIRECTOR OF THE SOUTHEASTERN
REGION OF DEPARTMENT OF ENVIRONMENTAL
PROTECTION; PENNSYLVANIA DEPARTMENT OF
ENVIRONMENTAL PROTECTION – SOUTHEAST REGION

Chester Residents Concerned for Quality, Zulene Mayfield,
Cathy Morse, King McDonald, Angela McDonald, Carlene
P. Stevenson*, Louis S. Morse, Rick Otten, Lisa Morse
Rothwell, Arthur H. Rothwell, III, Margarita Santiago,
Ricardo Santiago, Daniel Murphy, Janet Weiss, Renee D.
Dale, Frances Rothwell, and Lisa Gilliam,
Appellants

(Caption amended per Clerk's 3/10/97 order)

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 96-cv-03960)

Argued September 25, 1997

BEFORE: COWEN, ROTH and LEWIS, Circuit Judges

(Filed December 30, 1997)

        Jerome Balter, Esq.
        Public Interest Law Center
         of Philadelphia
        125 South 9th Street
        Suite 700
        Philadelphia, PA 19107

        Gilbert Paul Carrasco, Esq. (Argued)
        Villanova University
        Villanova Law School
        Villanova, PA 19085

         COUNSEL FOR APPELLANTS

        Chester Residents Concerned for
        Quality Living
        Zulene Mayfield; Cathy Morse;
        Ossie Morse; King McDonald;
        Angela McDonald; Carlene P.
        Stevenson; Louis S. Morse; Rick
        Otten; Linda Morse Rothwell;
        Arthur H. Rothwell, III; Margarita
        Santiago; Daniel Murphy; Janet
        Weiss; Reagan Otten; Renee D.
        Dale; Frances Rothwell; Lisa
        Gilliam; Ricardo Santiago

Mark L. Freed, Esq. (Argued)
Commonwealth of Pennsylvania
Department of Environmental
 Resources
555 North Lane
Suite 6015, Lee Park
Conshohocken, PA 19428-2233

 COUNSEL FOR APPELLEES

James M. Seif, in his capacity as
Secretary of the Pennsylvania
Department of Environmental
Protection

Pennsylvania Department of
Environmental Protection

Carol R. Collier, in her capacity as
Director of the Southeastern
Region of Department of
Environmental Protection

Pennsylvania Department of
Environmental Protection,
Southeast Region

Seth M. Galanter, Esq.
United States Department of Justice
Civil Rights Division
P.O. Box 66078
Washington, D.C. 20035-6078

 COUNSEL FOR AMICUS-
 APPELLANT

 United States of America

3

Arthur H. Bryant, Esq.
Trial Lawyers of Public Justice
1717 Massachusetts Avenue, N.W.
Suite 800
Washington, D.C. 20036

 COUNSEL FOR AMICUS-
 APPELLANT

 Trial Lawyers for Public Justice
 Southern Poverty Law Center

OPINION OF THE COURT

Cowen, Circuit Judge.

This appeal presents the purely legal question of whether a private right of action exists under discriminatory effect regulations promulgated by federal administrative agencies pursuant to section 602 of Title VI of the Civil Rights Act of 1964, 42 U.S.C. S 2000d et seq. The district court determined that plaintiffs-appellants Chester Residents Concerned for Quality Living ("CRCQL") could not maintain an action under a discriminatory effect regulation promulgated by the United States Environmental Protection Agency ("EPA") pursuant to section 602 of Title VI. See 944 F. Supp. 413 (E.D. Pa. 1996). In so doing, it relied largely on our decision in Chowdhury v. Reading Hosp. & Med. Ctr., 677 F.2d 317 (3d Cir. 1982).

We find that Chowdhury is not dispositive on this issue. Subsequent jurisprudence, namely Guardians Ass'n v. Civil Serv. Comm'n, 463 U.S. 582, 103 S. Ct. 3221 (1983), and its progeny, provides support for the existence of a private right of action. Moreover, Chowdhury did not apply this court's test for determining when it is appropriate to imply a private right of action to enforce regulations. We agree with the overwhelming number of courts of appeals that have indicated, with varying degrees of analysis, that a private right of action exists under section 602 of Title VI and its implementing regulations. We will reverse.

4

I.

The non-profit corporation CRCQL brought suit against
the Pennsylvania Department of Environmental Protection
("PADEP") and James M. Seif, in his capacity as Secretary
of PADEP, and other related defendants. CRCQL alleges
that PADEP's issuance of a permit to Soil Remediation
Services, Inc., to operate a facility in the City of Chester, a
predominantly black community, violated the civil rights of
CRCQL's members.1 Specifically, the complaint asserts that
PADEP's grant of the permit violated: (1) section 601 of Title
VI of the Civil Rights Act of 1964, 42 U.S.C. S 2000d et seq.;2
(2) the EPA's civil rights regulations, 40 C.F.R.S 7.10 et
seq., promulgated pursuant to section 602 of Title VI;3 and
(3) PADEP's assurance pursuant to the regulations that it
would not violate the regulations. This appeal concerns only
Count Two.

_____

1. The City of Chester is located in Delaware County, Pennsylvania, and
has a population of approximately 42,000, of which 65% is black and
32% is white. Delaware County, excluding Chester, has a population of
approximately 502,000, of which 6.2% is black and 91% is white.
CRCQL alleges that PADEP granted five waste facility permits for sites in
the City of Chester since 1987, while only granting two permits for sites
in the rest of Delaware County. It further alleges that the Chester
facilities have a total permit capacity of 2.1 million tons of waste per
year, while the non-Chester facilities have a total permit capacity of
only
1,400 tons of waste per year.

2. Section 601 of Title VI provides, "No person in the United States
shall,
on the ground of race, color, or national origin, be excluded from
participation in, be denied the benefits of, or be subjected to
discrimination under any program or activity receiving Federal financial
assistance." 42 U.S.C. S 2000d (1994).

3. Section 602 of Title VI provides, in part, that:

        Each Federal department and agency which is empowered to
        extend Federal financial assistance to any program or activity, by
        way of grant, loan, or contract other than a contract of insurance
or
        guaranty, is authorized and directed to effectuate the provisions
of
        section 2000d of this title with respect to such program or
activity
        by issuing rules, regulations, or orders of general applicability
which
        shall be consistent with achievement of the objectives of the
statute

authorizing the financial assistance in connection with which the action is taken.

42 U.S.C. S 2000d-1.

5

PADEP has authority to issue or deny applications for permits to operate waste processing facilities. See 35 Pa. Cons. Stat. Ann. S 6018.101 et seq. (West 1993). PADEP receives federal funding from the EPA to operate Pennsylvania's waste programs pursuant to the Resource Conservation and Recovery Act, 42 U.S.C. S 6901 et seq., and other federal sources.

Title VI and the EPA's civil rights regulations implementing Title VI condition PADEP's receipt of federal funding on its assurance that it will comply with Title VI and the regulations. See 40 C.F.R. S 7.80(a) (1997).4 In part, these regulations prohibit recipients of federal funding from using "criteria or methods . . . which have the effect of subjecting individuals to discrimination because of their race, color, national origin, or sex . . . ." 40 C.F.R. S 7.35(b).

The district court dismissed Count One of CRCQL's complaint without prejudice. It found that CRCQL failed to allege intentional discrimination on the part of PADEP, which is a required element for an action brought under section 601 of Title VI.5 The court, however, granted leave to amend Count One, affording CRCQL the opportunity to allege intentional discrimination. CRCQL subsequently informed the district court that it would not amend the complaint, and the district court entered a final judgment on that count.

The district court dismissed Counts Two and Three with

_____

4. This provision requires:

    Applicants for EPA assistance shall submit an assurance with their
    applications stating that, with respect to their programs or activities
    that receive EPA assistance, they will comply with the requirements
    of this Part. Applicants must also submit any other information that
    the OCR determines is necessary for preaward review. The
    applicant's acceptance of EPA assistance is an acceptance of the
    obligation of this assurance and this Part.

40 C.F.R. S 7.80(a)(1).

5. See Alexander v. Choate, 469 U.S. 287, 293, 105 S. Ct. 712, 716 (1985) (clarifying that the Court's decision in Guardians established that "Title VI itself directly reach[es] only instances of intentional discrimination").

6

prejudice, finding that no private right of action exists under which CRCQL could enforce the EPA's civil rights regulations.6 In reaching this determination, it relied on our statements in Chowdhury, which concerned whether a private plaintiff must first exhaust administrative remedies under section 602 of Title VI and its implementing regulations before bringing suit directly under section 601. In holding that a plaintiff need not do so, we reasoned in Chowdhury:

> Congress explicitly provided for an administrative enforcement mechanism, contained in section 602, by which the funding agency attempts to secure voluntary compliance and, failing that, is empowered to terminate the violator's federal funding. Under the regulations promulgated pursuant to this section, an aggrieved individual may file a complaint with the funding agency but has no role in the investigation or adjudication, if any, of the complaint. The only remedies contemplated by the language of the Act and the Regulations are voluntary compliance and funding termination. There is no provision for a remedy for the victim of the discrimination, such as injunctive relief or damages.

677 F.2d at 319-20 (footnotes omitted). The district court took these statements to signify that no private right of action exists under the EPA's civil rights regulations. Although the district court noted that the Supreme Court's decision in Guardians and the decisions of other courts of appeals provide support for implying a private right of action, it determined that Chowdhury required the opposite conclusion. See 944 F. Supp. at 417 n.5 ("We find that the Supreme Court has never decided the question of whether there is an implied right of action under the regulations and that our Court of Appeals's Chowdhury decision is authoritative on us.").

_____

6. CRCQL only appeals the dismissal of Count Two. We have no occasion to consider the issue, raised by Count Three, of whether a private cause of action exists to enforce 40 C.F.R. S 7.80(a), which requires applicants for EPA assistance to "submit an assurance with their applications stating that, with respect to their programs or activities that receive EPA
assurance, they will comply with the requirements of [the regulations]."

II.

The district court had jurisdiction pursuant to 28 U.S.C. S 1331. We have jurisdiction over this appeal pursuant to 28 U.S.C. S 1291. We exercise plenary review over the district court's construction of Title VI and its conclusions of law. See In re Corestates Trust Fee Litig., 39 F.3d 61, 63 (3d Cir. 1994); Unger v. Nat'l Residents Matching Program, 928 F.2d 1392, 1394 (3d Cir. 1991).

III.

It is important to distinguish at the outset between section 601 of Title VI, which was the basis of Count One of CRCQL's complaint, and section 602, which was the basis of Count Two. A private right of action exists under section 601, but this right only reaches instances of intentional discrimination as opposed to instances of discriminatory effect or disparate impact. See Alexander, 469 U.S. at 293, 105 S. Ct. at 716 ("Title VI itself directly reache[s] only instances of intentional discrimination.").

In contrast, section 602 merely authorizes agencies that distribute federal funds to promulgate regulations implementing section 601. The EPA promulgated such implementing regulations, which provide in relevant part:

> A recipient shall not use criteria or methods of administering its program which have the effect of subjecting individuals to discrimination because of their race, color, national origin, or sex, or have the effect of defeating or substantially impairing accomplishment of the objectives of the program with respect to individuals of a particular race, color, national origin, or sex.

40 C.F.R. S 7.35(b). This regulation clearly incorporates a discriminatory effect standard. The Supreme Court subsequently held that the promulgation of regulations incorporating this standard is a valid exercise of agency authority. See Alexander, 469 U.S. at 292-94, 105 S. Ct. at 716. CRCQL seeks the right to proceed against PADEP under this standard, rather than the more stringent standard required under section 601.

8

A.

We look first to the applicable Supreme Court jurisprudence. CRCQL contends that the Court's decisions in Guardians and Alexander establish a private right of action. Guardians is a fragmented decision consisting of five separate opinions. It concerned a suit by black and hispanic police officers alleging that certain lay-offs by their department violated Title VI and Title VII of the Civil Rights Act of 1964, as well as the Fourteenth Amendment, 42 U.S.C. SS 1981 and 1983, and other state and federal laws. The Supreme Court has now made it undeniably clear that Guardians stands for at least two propositions: (1) a private right of action exists under section 601 of Title VI that requires plaintiffs to show intentional discrimination; and (2) discriminatory effect regulations promulgated by agencies pursuant to section 602 are valid exercises of their authority under that section. See Alexander, 469 U.S. at 292-94, 105 S. Ct. at 716.

i.

Guardians did not explicitly address whether a private right of action exists under discriminatory effect regulations promulgated under section 602. CRCQL contends that Guardians nevertheless implicitly validated the existence of a private right of action. CRCQL makes two principal arguments in support of its position: (1) a majority of the Court in Guardians determined that private plaintiffs in disparate impact cases can recover injunctive or declarative relief; and (2) if a private right of action did not exist, the Court would have dismissed the plaintiffs' claims under the regulations sua sponte for failure to state a claim.

A close reading of the opinions in Guardians reveals that five Justices agreed that injunctive and declarative relief are available in discriminatory effect cases. For instance, Justice White stated in his opinion that he would allow private plaintiffs to proceed under section 601 with a discriminatory effect claim and to recover injunctive or declaratory relief. See 463 U.S. at 584, 589-93, 103 S. Ct. at 3223, 3226-28 (opinion of White, J.). Justice White did not comment on section 602 and its implementing

9

regulations. We can infer, however, from his willingness to allow a private plaintiff to proceed under section 601 in cases of discriminatory effect that he would have allowed private actions to proceed under section 602 and its implementing regulations, where a discriminatory effect standard applies.[7]

Justice Marshall stated in his dissent that he would allow private plaintiffs in discriminatory effect cases to proceed under section 601 but, unlike Justice White, would allow them to recover injunctive, declaratory, or compensatory relief. See 463 U.S. at 615, 103 S. Ct. at 3239–40 (Marshall, J., dissenting). As with Justice White, we can infer that Justice Marshall would have allowed similar actions under section 602 and its implementing regulations.

Justice Stevens, joined by Justices Brennan and Blackmun, determined: (1) private plaintiffs may seek injunctive, declaratory, or compensatory relief under Title VI; (2) intentional discrimination is a necessary element under section 601 of Title VI; and (3) regulations that incorporate a disparate impact standard are valid. See 463 U.S. at 641–45, 103 S. Ct. at 3253–55 (Stevens, J., dissenting, joined by Brennan and Blackmun, JJ.). Although Justice Stevens did not distinguish between a private right of action and an administrative remedy, he concluded by saying, "[A]lthough petitioners had to prove that the respondents' actions were motivated by an invidious intent in order to prove a violation of[Title VI], they only had to show that the respondents' actions were producing discriminatory effects in order to prove a violation of [the regulations]." Id. at 645, 103 S. Ct. at 3255.

Based on the foregoing, we can find an implicit approval by five Justices of the existence of a private right of action under discriminatory effect regulations implementing section 602 of Title VI. We hesitate, however, to hold that Guardians is dispositive of this appeal because the Court did not directly address the issue now before us.
_____

7. We recognize that this inference requires a supposition, because sections 601 and 602 differ in substantial respects, as the discussion in section III.C.ii., infra, indicates.

CRCQL's second argument based on Guardians also has some merit. CRCQL argues that a private right of action exists because the Guardians Court did not dismiss the plaintiffs' action sua sponte for failure to state a claim. It is important to remember, however, that no party in Guardians raised, by Rule 12(b)(6) of the Federal Rules of Civil Procedure or otherwise, the issue of whether a private right of action exists under section 602 and its implementing regulations. The Court did not have reason to speak directly to the issue, and based on the foregoing discussion, it is clear that it did not. Consequently, we find that CRCQL's second argument also lacks sufficient force to dispose of this appeal.

ii.

The Court offered some clarification of Guardians in its unanimous decision in Alexander, which involved section 504 of the Rehabilitation Act of 1973, 29 U.S.C.S 794, and its implementing regulations. With respect to Guardians, the Alexander Court stated:

> In Guardians, we confronted the question whether Title VI of the Civil Rights Act of 1964, which prohibits discrimination against racial and ethnic minorities in programs receiving federal aid, reaches both intentional and disparate-impact discrimination. No opinion commanded a majority in Guardians, and Members of the Court offered widely varying interpretations of Title VI. Nonetheless, a two-pronged holding on the nature of the discrimination proscribed by Title VI emerged in that case. First, the Court held that Title VI itself directly reached only instances of intentional discrimination. Second, the Court held that actions having an unjustifiable disparate impact on minorities could be redressed through agency regulations designed to implement the purposes of Title VI. In essence, then, we held that Title VI had delegated to the agencies in the first instance the complex determination of what sorts of disparate impacts upon minorities constituted sufficiently significant social problems, and were readily enough remediable, to

11

warrant altering the practices of the federal grantees that had produced those impacts.

469 U.S. at 292-94, 105 S. Ct. at 716 (citation and footnotes omitted). The most plausible reading of this language is that it confirms that a private right of action exists under section 601 of Title VI and that the promulgation of discriminatory effect regulations is a valid exercise of agency authority under section 602.

CRCQL argues that the Court recognized the existence of a private right of action in the following language from Alexander:

"Guardians, therefore, does not support petitioners' blanket proposition that federal law proscribes only intentional discrimination against the handicapped. Indeed, to the extent our holding in Guardians is relevant to the interpretation of S 504, Guardians suggests that the regulations implementing S 504, upon which respondents in part rely, could make actionable the disparate impact challenged in this case.

469 U.S. at 294, 105 S. Ct. at 716.8 Stitching together CRCQL's arguments and those made by the Trial Lawyers for Public Justice ("TLPJ") and the Southern Poverty Law Center ("SPLC") as amici, the argument in favor of inferring the existence of a private right of action from Alexander proceeds as follows. The Alexander Court noted in the above-quoted language that, to the extent that Title VI jurisprudence is relevant to the Rehabilitation Act, Guardians "suggests" that a party can proceed with a disparate impact claim under section 504's implementing regulations. This suggestion obtains, the argument must go, because Guardians itself stands for the proposition that a party can proceed with a disparate impact claim under the regulations implementing section 602. Alexander,

---

8. The issue that the Alexander Court was addressing when it made these statements was whether discriminatory intent is required to establish a violation of section 504 of the Rehabilitation Act, 29 U.S.C. S 794, and its implementing regulations. The Court ultimately determined that some, but not all, disparate impact showings constitute a prima facie case under the Rehabilitation Act. 469 U.S. at 292-99, 105 S. Ct. at 715-19.

12

therefore, implicitly confirms that Guardians recognized the existence of a private right of action.

While CRCQL's argument has some merit, we are not persuaded. The Court in Alexander spoke in the passive voice -- "could make actionable" -- and did not indicate whether Guardians stood for the proposition that a private plaintiff, or the relevant agency, could proceed under a disparate impact standard. CRCQL's argument requires the inference that because Alexander was a suit brought by private plaintiffs, and because Guardians was also brought by private plaintiffs, the Alexander Court must have been speaking of private plaintiffs when it used the passive voice. This inference from Guardians may be justified, but we find no direct authority in Alexander that either confirms or denies the existence of a private right of action. Consequently, we decline to hold that a private right of action exists based on Guardians and Alexander alone.9

_____

9. PADEP argues that the Court's opinion in United States v. Fordice, 505 U.S. 717, 112 S. Ct. 2727 (1992), indicates that no private right of action
to enforce Title VI regulations exists. PADEP misconstrues Fordice. Fordice addressed Title VI in a single footnote, which stated in relevant part:

> Private petitioners reiterate in this Court their assertion that the
> state system also violates Title VI, citing a regulation to that statute
> which requires States to "take affirmative action to overcome the
> effects of prior discrimination." Our cases make clear, and the
> parties do not disagree, that the reach of Title VI's protection
> extends no further than the Fourteenth Amendment. We thus treat
> the issues in these cases as they are implicated under the
> Constitution.

Id. at 732 n.7, 112 S. Ct. at 2738 n.7 (citations omitted). Fordice did not
indicate that private plaintiffs were barred from asserting a claim under the regulation quoted. Rather, the Court merely noted that the affirmative relief called for under the statute could not reach beyond that
afforded by the Constitution itself. Hidden within the Court's statement may be an indication that implementing regulations, such as the EPA's, that incorporate a discriminatory effect standard are invalid, because they extend further than the Fourteenth Amendment. Guardians and Alexander, however, state that such regulations are valid. Moreover, we do not believe that the Court would overturn Guardians and Alexander in such an oblique manner.

13

B.

Having determined that the applicable Supreme Court precedent is not dispositive, we look to our own precedent. The district court relied on our statements in Chowdhury for the conclusion that no private right of action exists. See 944 F. Supp. at 417. CRCQL, and TLPJ and SPLC as amici, argue that reliance on Chowdhury is questionable because: (1) Chowdhury did not apply this Circuit's three-prong test for determining when it is appropriate to infer a private right of action to enforce regulations; and (2) Chowdhury was decided before Guardians.

The sole question in Chowdhury was whether a private plaintiff must first exhaust administrative remedies under section 602 and its implementing regulations before bringing suit directly under section 601. In holding that a plaintiff need not do so, we reasoned that "an aggrieved individual may file a complaint with the funding agency but has no role in the investigation or adjudication, if any, of the complaint." 677 F.2d at 319 (footnotes omitted). Moreover, we stated that "[t]here is no provision for a remedy for the victim of the discrimination, such as injunctive relief or damages." Id. at 320 (footnote omitted).

Chowdhury appears to decide that no private right of action exists under the regulations, and we readily understand why the district court reached this conclusion. We nevertheless disagree with that conclusion. Chowdhury does not hold that no private right of action exists under section 602 and its implementing regulations. It merely indicates that the regulations themselves do not expressly provide for a significant role for private parties, which is apparent on the face of the regulations. Chowdhury says nothing about the appropriateness of implying a private right of action. Section 602 and its implementing regulations were only relevant in Chowdhury to the extent that they, on their face, afforded private plaintiffs a peripheral role in administrative proceedings. The Chowdhury court took this peripheral role as an indication that private plaintiffs should not have to pursue their claims under the regulations before initiating a direct action pursuant to their rights under section 601. The district court misapplied our statements in Chowdhury.

14

Looking to our other precedent, CRCQL and amici cite our decision in Pfeiffer v. Marion Ctr. Area Sch. Dist., 917 F.2d 779 (3d Cir. 1990), a post-Guardians opinion, in support of the existence of a private right of action. Pfeiffer involved a suit by a high school student alleging gender discrimination in her dismissal from the local chapter of the National Honor Society. The plaintiff asserted claims under Title IX of the Education Amendments of 1972 and its implementing regulations, as well as other federal and state statutes. Pfeiffer is only significant to this appeal because we made therein the following statements concerning Guardians:

> In Guardians, the "threshold issue before the Court [was] whether . . . private plaintiffs . . . need to prove discriminatory intent to establish a violation of Title VI . . . and administrative implementing regulations promulgated thereunder." A majority of the Court agreed that a violation of the statute itself requires proof of discriminatory intent. A different majority seemed to suggest that proof of discriminatory effect suffices to establish liability when suit is brought to enforce the regulations rather than the statute itself.

917 F.2d at 788 (quoting Guardians, 463 U.S. at 584, 103 S. Ct. at 3223) (citations omitted).

It is of course informative to read an interpretation of Guardians by a prior panel. The interpretation, however, is dicta and not binding on this panel. Pfeiffer concerned a claim of intentional gender discrimination, not discriminatory effect. See id. ("This is, therefore, not a case of discriminatory effect, but one of discriminatory intention."). The issue before the court was whether the district court's finding that school authorities dismissed the plaintiff from the National Honor Society because of premarital sex and not gender discrimination was clearly erroneous. See id. at 780. The court had no reason to consider the status of a private right of action under section 602 and its implementing regulations. In addition, the above-quoted language from Pfeiffer, like the Supreme Court's opinion in Alexander, is in the passive voice-- "when suit is brought"-- and fails to specify who may bring

15

suit to enforce the regulations. Although Pfeiffer is
instructive, we find it insufficient to dispose of this appeal.

C.

Since our own precedent does not resolve the matter, we
must now determine whether to imply a private right of
action. This court has established a three-prong test for
determining when it is appropriate to imply private rights of
action to enforce regulations. The test requires a court to
inquire: "(1) `whether the agency rule is properly within the
scope of the enabling statute'; (2) `whether the statute
under which the rule was promulgated properly permits the
implication of a private right of action'; and (3)`whether
implying a private right of action will further the purpose of
the enabling statute.' " Polaroid Corp. v. Disney, 862 F.2d
987, 994 (3d Cir. 1988) (quoting Angelastro v. Prudential–
Bache Sec., Inc., 764 F.2d 939, 947 (3d Cir. 1985)). We
discuss each prong in turn.

i.

There is no question that the EPA's discriminatory effect
regulation satisfies the first prong. The Supreme Court's
unanimous opinion in Alexander makes clear that "actions
having an unjustifiable disparate impact on minorities [can]
be redressed through agency regulations designed to
implement the purposes of Title VI." 469 U.S. at 293, 105
S. Ct. at 716 (footnote omitted).

ii.

The second and third prongs are the crux of this case. In
addressing the second, a court will consider the factors set
out by the Supreme Court in Cort v. Ash, 422 U.S. 66, 95
S. Ct. 2080 (1975), and its progeny. See Angelastro, 764
F.2d at 947. The factors relevant here are: (1) whether there
is "any indication of legislative intent, explicit or implicit,
either to create such a remedy or to deny one"; and (2)
whether it is "consistent with the underlying purposes of
the legislative scheme to imply such a remedy for the

16

plaintiff." Cort, 422 U.S. at 78, 95 S. Ct. at 2088 (citations omitted).10

The United States, as amicus, contends that the implication of a private right of action is consistent with legislative intent because Congress acknowledged the existence of the right when it amended Title VI. The purpose of the amendment was to broaden the scope of coverage of Title VI in response to the Supreme Court's decision in Grove City College v. Bell, 465 U.S. 555, 104 S. Ct. 1211 (1984), where the Court narrowly construed the terms "program or activity."11 The United States cites various items of legislative history which it claims indicates an "understanding . . . [of] the existence of the discriminatory effects regulations and the fact that they could be enforced in federal court by private parties." Amicus Br. at 21.

First, the United States relies on a House Report on an early version of the relevant bill, which states that the "private right of action which allows a private individual or entity to sue to enforce Title IX would continue to provide the vehicle to test [certain] regulations in Title IX and their expanded meaning to their outermost limits." H.R. REP. NO. 963, Pt. 1, 99th Cong., 2d Sess. 24 (1986).12 Second, the

_____

10. The other Cort factors are: (1) whether the plaintiff is "one of the class for whose especial benefit the statute was enacted,-- that is, does the statute create a federal right in favor of the plaintiff "; and (2) whether the cause of action is "one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law." 422 U.S. at 78, 95 S. Ct. at 2088 (citations and internal quotation marks omitted). Clearly, CRCQL satisfies the first. The second is irrelevant because Title VI is federal law.

11. Section 601 of Title VI prohibits any "program or activity" receiving Federal funds from discriminating on various grounds. See 42 U.S.C. S 2000d.

12. Courts have regarded Title IX and Title VI jurisprudence as, more or less, interchangeable. See Cannon v. University of Chicago, 441 U.S. 677, 694-96, 99 S. Ct. 1946, 1956-57 (1979) ("Title IX was patterned after Title VI of the Civil Rights Act of 1964. Except for the substitution of the word `sex' in Title IX to replace the words `race, color, or national origin' in Title VI, the two statutes use identical language to describe the benefited class. . . . The drafters of Title IX explicitly assumed that it would be interpreted and applied as Title VI had been during the preceding eight years." (footnotes omitted)).

United States relies on several legislators' comments in the Congressional Record, where the legislators appear to recognize the existence of a private right of action.13 Third, the United States also relies on the following compilations of testimony at congressional hearings: Civil Rights Act of 1984: Hearings on S. 2568 Before the Subcomm. on the Const. of the Senate Comm. on the Judiciary, 98th Cong., 2d Sess. 23-24, 153-54, 200 (1984); Civil Rights Restoration Act of 1985: Joint Hearings on H.R. 700 Before the House Comm. on Educ. & Labor and the Subcomm. on Civil & Const. Rights of the House Comm. on the Judiciary, 99th Cong., 1st Sess. 734, 1095, 1099 (1985). The first compilation contains, inter alia, a memorandum by the Office of Management and Budget ("OMB") which states OMB's opinion that "every licensed attorney would be empowered to file suit to enforce the `effects test' regulations of agencies, challenging practices in every aspect of every institution that receives any Federal assistance." Civil Rights Act of 1984: Hearings on S. 2568 Before the Subcomm. on the Const. of the Senate Comm. on the Judiciary, 98th Cong., 2d Sess. 527 (1984).

PADEP presents two responses. First, PADEP emphasizes that the purpose of the amendment of Title VI was to address the Supreme Court's decision in Grove City, not to confirm or announce the existence of a private right of action. Second, PADEP reminds the court that many of the

_____

13. The United States quotes the following observations of Senator Hatch:

    The failure to provide a particular share of contract opportunities to
    minority-owned businesses, for example, could lead Federal agencies
    to undertake enforcement action asserting that the failure to provide
    more contracts to minority-owned firms, standing alone, is
    discriminatory under agency disparate impact regulations
    implementing Title VI. . . . Of course, advocacy groups will be able
    to bring private lawsuits making the same allegations before federal
    judges.

134 CONG. REC. 4,257 (1988). The United States also quotes a portion of the following statement by Representative Fields: "If a greater percentage of minority than white students fail a bar exam or a medical exam . . . will a State be subject to private lawsuits because the tests have a disproportionate impact on minorities[.]" 130 CONG. REC. 18,880 (1984).

above-cited comments may only reflect the views of individual members of Congress. PADEP does not, however, cite to any statements in the Congressional Record or elsewhere that would undermine those cited by the United States. We therefore find that there is some indication in the legislative history, here uncontroverted, of an intent to create a private right of action, in satisfaction of the Cort factors.

This finding, however, does not end our inquiry. The Cort factors also require a court to determine whether it is "consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff[.]" 422 U.S. at 78, 95 S. Ct. at 2088. Relevant to this inquiry is PADEP's argument that section 602 and the regulations situate the EPA as, in essence, a gatekeeper to enforcement, and that the implication of a private right of action would be inconsistent with this legislative scheme. According to PADEP, section 602 imposes what PADEP terms as "strict preconditions" on the use of that section's enforcement apparatus.14 Specifically, section 602 provides:

> [N]o such action shall be taken until the department or agency concerned has advised the appropriate person or persons of the failure to comply with the requirement and has determined that compliance cannot be secured by voluntary means. In the case of any action terminating, or refusing to grant or continue, assistance because of failure to comply with

_____

14. Section 602 provides for the following enforcement apparatus:

> Compliance with any requirement adopted pursuant to this section may be effected (1) by the termination of or refusal to grant or to continue assistance under such program or activity to any recipient as to whom there has been an express finding on the record, after opportunity for hearing, of a failure to comply with such requirement, but such termination or refusal shall be limited to the particular political entity, or part thereof, or other recipient as to whom such a finding has been made and, shall be limited in its effect to the particular program, or part thereof, in which such noncompliance has been so found, or (2) by any other means authorized by law . . . .

42 U.S.C. S 2000d-1.

19

a requirement imposed pursuant to this section, the head of the Federal department or agency shall file with the committees of the House and Senate having legislative jurisdiction over the program or activity involved a full written report of the circumstances and the grounds for such action. No such action shall become effective until thirty days have elapsed after the filing of such report.

42 U.S.C. S 2000d-1. EPA enforcement action can occur only after the agency has negotiated these procedural requirements. Should we find that it is appropriate to imply a private right of action, PADEP emphasizes that private plaintiffs would not have to negotiate these requirements.

In addition, PADEP emphasizes that the EPA's regulations expressly provide private parties with an administrative mechanism through which they can raise allegations of unintentional discrimination. See 40 C.F.R. SS 7.120-7.130. These regulations provide, in relevant part:

A person who believes that he or she or a specific class of persons has been discriminated against in violation of this Part may file a complaint. The complaint may be filed by an authorized representative. A complaint alleging employment discrimination must identify at least one individual aggrieved by such discrimination. Complaints solely alleging employment discrimination against an individual on the basis of race, color, national origin, sex or religion shall be processed under the procedures for complaints of employment discrimination filed against recipients of federal assistance. Complainants are encouraged but not required to make use of any grievance procedure established under S 7.90 before filing a complaint. Filing a complaint through a grievance procedure does not extend the 180 day calendar requirement of paragraph (b)(2) of this section.

40 C.F.R. S 7.120(a) (citation omitted). In PADEP's estimation, section 602 and the regulations situate the EPA as a gatekeeper to enforcement, with private parties submitting their allegations to the agency and its discretion. PADEP contends that a private right of action is inconsistent with this legislative scheme.

20

We recognize that PADEP's argument has some force. There is, however, a more convincing counter-argument. The procedural requirements in section 602 provide a fund recipient with a form of notice that the agency has begun an investigation which may culminate in the termination of its funding. We note that a private lawsuit also affords a fund recipient similar notice. If the purpose of the requirements is to provide bare notice, private lawsuits are consistent with the legislative scheme of Title VI. Furthermore, unlike the EPA, private plaintiffs do not have the authority to terminate funding.15 As a result, the purpose that the requirements serve is not as significant in private lawsuits, where the potential remedy does not include the result (i.e., termination of funding) at which Congress directed the requirements. Stated differently, the requirements were designed to cushion the blow of a result that private plaintiffs cannot effectuate. Based on the foregoing, we find that the implication of a private right of action would be consistent with the legislative scheme of Title VI.

In sum, we find that there is some indication in the legislative history of an intent to create a private right of action and that the implication of a private right of action would be consistent with the legislative scheme of Title VI, in accordance with the relevant Cort factors. Accordingly, we find that " `the statute under which the rule was promulgated properly permits the implication of a private right of action,' " Polaroid Corp., 862 F.2d at 994 (quoting Angelastro, 764 F.2d at 947), and that the second prong of the test is satisfied.

_____

15. While it is well established that private plaintiffs do not have the authority to compel a termination of funding, we make no determination at this time as to what alternative remedies offer appropriate relief for plaintiffs who prevail in actions to enforce agency regulations brought pursuant to section 602. See NAACP v. Medical Center, Inc., 599 F.2d 1247, 1254 n.27 (3d Cir. 1979). See also Cannon, 441 U.S. at 711–17, 99 S. Ct. at 1965–68 (discussing the legislative history of Title VI as it relates to the implication of a private remedy for victims of discrimination). Rather, should relief prove warranted in this case, we leave the determination of the appropriate remedy to the district court in the first instance.

iii.

The third prong of the test requires the court to inquire " `whether implying a private right of action will further the purpose of the enabling statute.' " Id. (quoting Angelastro, 764 F.2d at 947). The United States contends that this prong is satisfied because the implication of a private right of action under section 602 and the regulations will further the dual purposes of Title VI, which are to: (1) combat discrimination by entities who receive federal funds; and (2) provide citizens with effective protection against discrimination. See Cannon, 441 U.S. at 704, 99 S. Ct. at 1961. A private right of action will further these purposes, the argument goes, because it will deputize private attorneys general who will enforce section 602 and its implementing regulations. The United States, moreover, points out that the EPA itself lacks sufficient resources to achieve adequate enforcement.

We agree with the United States that, to the extent that a private right of action will increase enforcement, the implication of that right will further the dual purposes of Title VI. Consequently, we find that the third prong of the test is also satisfied.

iv.

Lastly, although no other court of appeals has rendered a holding on the precise issue before this court, we note that the decisions of other courts of appeals indicate support for our reasoning. See, e.g., Latinos Unidos de Chelsea v. Secretary of Hous. & Urban Dev., 799 F.2d 774, 785 n.20 (1st Cir. 1986) ("Under the statute itself, plaintiffs must make a showing of discriminatory intent; under the regulations, plaintiffs simply must show a discriminatory impact." (citation omitted)); New York Urban League, Inc. v. New York, 71 F.3d 1031, 1036 (2d Cir. 1995) ("Courts considering claims under analogous Title VI regulations have looked to Title VII disparate impact cases for guidance. A plaintiff alleging a violation of the DOT regulations must make a prima facie showing that the alleged conduct has a disparate impact." (citations omitted)); Castaneda by Castaneda v. Pickard, 781 F.2d

22

456, 465 n.11 (5th Cir. 1986) ("Thus a Title VI action can now be maintained in either the guise of a disparate treatment case, where proof of discriminatory motive is critical, or in the guise of a disparate impact case, involving employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another. In this latter type of case, proof of discriminatory intent is not necessary." (citation omitted)); Buchanan v. City of Bolivar, Tenn., 99 F.3d 1352, 1356 n.5 (6th Cir. 1996) ("A plaintiff may pursue a claim under a disparate impact theory as well. However, a disparate impact theory is not applicable in the case at hand." (citation omitted)); David K. v. Lane, 839 F.2d 1265, 1274 (7th Cir. 1988) ("It is clear that plaintiffs may maintain a private cause of action to enforce the regulations promulgated under Title VI of the Civil Rights Act. Moreover, plaintiffs need not show intentional discriminatory conduct to prevail on a claim brought under these administrative regulations. Evidence of a discriminatory effect is sufficient." (citation omitted)); Gomez v. Illinois State Bd. of Educ., 811 F.2d 1030, 1044–45 (7th Cir. 1987) ("Although the voting of the Justices may be difficult for the reader to discern at first, a majority of the Court in Guardians Association concluded that a discriminatory–impact claim could be maintained under those regulations, although not under the statute." (citations omitted)); Larry P. by Lucille P. v. Riles, 793 F.2d 969, 981–82 (9th Cir. 1984) ("[P]roof of discriminatory effect suffices to establish liability when the suit is brought to enforce regulations issued pursuant to the statute rather than the statute itself." (footnote omitted)); Villanueva v. Carere, 85 F.3d 481, 486 (10th Cir. 1996) ("Although Title VI itself proscribes only intentional discrimination, certain regulations promulgated pursuant to Title VI prohibit actions that have a disparate impact on groups protected by the act, even in the absence of discriminatory intent." (citation omitted)); Elston v. Talladega County Bd. of Educ., 997 F.2d 1394, 1406 (11th Cir. 1993) ("While Title VI itself, like the Fourteenth Amendment, bars only intentional discrimination, the regulations promulgated pursuant to Title VI may validly proscribe actions having a disparate impact on groups protected by the statute, even if those

23

actions are not intentionally discriminatory." (citations omitted)); Georgia State Conference of Branches of NAACP v. Georgia, 775 F.2d 1403, 1417 (11th Cir. 1985) ("There is no doubt that the plaintiffs predicated this cause of action on the regulations. As a result, the district court correctly applied disparate impact analyses to their Title VI claims." (footnote omitted)).

v.

In conclusion, the district court misapplied our decision in Chowdhury v. Reading Hosp. & Med. Ctr., 677 F.2d 317 (3d Cir. 1982). Chowdhury did not apply this court's three-prong test for determining when it is appropriate to imply a private right of action to enforce regulations and was decided before the Supreme Court's decision in Guardians. Applying that three-prong test, we hold that private plaintiffs may maintain an action under discriminatory effect regulations promulgated by federal administrative agencies pursuant to section 602 of Title VI of the Civil Rights Act of 1964. Accordingly, we will reverse and remand for further proceedings, including a consideration of the remaining grounds for dismissal contained in defendants' Motion to Dismiss.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

24